Filed 4/19/13  In re C.B. CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re C.B. et al., Persons Coming Under the Juvenile Court Law. | C071989 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL B.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD231151, JD232057, JD232058, JD232124) |

Michael B. (father) appeals from the juvenile court's order terminating his parental rights as to minors C.B., Matthew B., M.B., and Phillip B.  (Welf. & Inst. Code, § 395.)[1] Father contends the court erred by denying his petition to modify court orders (§ 388) and by failing to conduct an adequate investigation under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).  We shall affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, Sacramento County Department of Health and Human Services (the Department) filed a section 300 petition as to the newborn infant C.B., alleging that due to the substance abuse problem of mother (Miriam L.), the minor tested positive at birth for hydromorphone and tetrahydrocannabinol.[2]

Father said that although he and mother had been divorced since 2004 or 2005, he was C.B.'s father. He and mother had had intercourse around the time of C.B.'s conception, he was listed as the father on the birth certificate and signed a declaration of paternity at the hospital, and he held the child out as his own. He acknowledged, however, that another person whom he did not name might be the biological father.

Father reported bipolar disorder, diagnosed in childhood, for which he was currently being treated. He also claimed to have smoked medical marijuana, but not in six months. He received Supplemental Security Income (SSI) for his bipolar disorder and for back problems. He had recently tested negative for drugs.

An AOD (alcohol and other drugs) assessment found him to be "an occasional user with no or minimal related problems." He was referred for random drug testing.

Father said he was taking care of his other two children, aged nine and 11, over whom he had primary custody. He had recently relocated from the Redding area to look for work. Once he had stable housing he wanted the infant minor placed with him.

Father filed an ICWA-020 form claiming Seminole ancestry. Mother filed an ICWA-020 form claiming Apache ancestry.

---

[2] Mother's parental rights were terminated along with those of father. She is not a party to this appeal. We mention only those facts about her that help to clarify the issues father raises.

At the contested detention hearing, the juvenile court found father to be C.B.'s presumed father and ordered an ICWA investigation. But after the Apache and Seminole tribes returned negative responses to the notices sent, and father retracted his claim of Indian ancestry, the court ruled in March 2011 that the ICWA did not apply.

The juvenile court ordered the minor's placement in foster care and granted reunification services to both parents.

On March 22, 2011, the Department recommended placing the minor with father under dependent supervision because father now had adequate housing, his visits had gone well, he was testing negative for drugs, he was attending group counseling, and he planned to attend parenting classes. The juvenile court made the requested order.

Shortly afterward, the Department petitioned the juvenile court under section 388, requesting that the juvenile court remove the minor from father's custody and place him with mother under dependent supervision. The petition alleged that father had "relapsed," had left his apartment, and had left the minor and the older minors with mother. On April 1, 2011, mother allegedly found father smoking crack cocaine in the minors' presence. The Department had been unable to contact him, and his whereabouts were unknown.

In May 2011, the juvenile court placed the minor with mother under dependent supervision.

On December 29, 2011, the Department filed a subsequent supplemental petition as to C.B. (§ 342/387), alleging that mother had failed to rehabilitate from her substance abuse problem and to participate in services. Furthermore, mother had reported that father, who was using illegal substances, had located mother and the minors and had verbally and physically abused her, requiring her to move from her residence.

On January 4, 2012, the Department filed section 300 petitions as to the older minors presently in mother's custody, 12-year-old Matthew B. and 10-year-old M.B. The petitions alleged: Both parents had untreated substance abuse problems. In December 2011, mother and the maternal aunt reported that father continued to abuse illegal drugs and engaged in domestic violence with mother. Unknown men had come to the maternal aunt's home demanding payment for father's unpaid drug bills. C.B. was taken into protective custody on December 30, 2011.

The detention report as to C.B. stated that mother now claimed C.B.'s biological father was K.W., who was shot and killed by Redding police in August 2011.[3]

At the initial hearing on the consolidated petitions, the juvenile court found that the ICWA did not apply as to any of the minors.

The jurisdiction/disposition report as to C.B., Matthew B., and M.B. recommended their placement in the maternal grandparents' home in Redding, where they were currently staying.[4] The maternal grandparents were willing to become the minors' legal guardians.

The maternal grandmother reported that mother was pregnant with an anticipated due date in March 2012.

The maternal grandmother and the maternal aunt reported that the parents continued to see each other and mother allowed father to have daily contact with the children. The maternal aunt reported that father was violent with mother and the

---

[3] Respondent asserts that mother said K.W. was a Native American, but respondent's record citation does not support that assertion. Father does not assert that K.W. was a Native American.

[4] A later report noted that the maternal grandmother's husband was the minors' stepgrandfather.

children.  A domestic violence incident between the parents was reported in December 2011.

The jurisdiction/disposition report recommended terminating father's services. Father's whereabouts had been unknown for six months, during which he had not contacted the Department or participated in services.  Furthermore, the older minors wanted no visitation or contact with him.

On January 25, 2012, the Department filed a section 300 petition as to the recently born minor Phillip B., alleging inter alia that mother and the minor tested positive for cocaine immediately after the minor's birth.  The minor was experiencing withdrawal symptoms and remained hospitalized.  Mother was discharged and both parents' whereabouts were unknown.  Phillip B. was placed in protective custody.

In February 2012, the Department recommended terminating both parents' services as to the three older minors.  The parents' whereabouts were still unknown, and the one-year statutory limit for services as to C.B. had expired.

The jurisdiction/disposition report as to Phillip B. stated that on January 27, 2012, the parents were located at Kaiser Hospital visiting the baby.  Father reported that he was homeless because his "Social Security" payee had not been giving him money.  He claimed he had been diagnosed with schizophrenia as well as bipolar disorder and was receiving shock treatment for his mood swings.[5]  He was taking a variety of medications for physical and mental problems.  He had used marijuana the night before.

On February 16, 2012, the juvenile court consolidated Phillip B.'s case with that of the older minors.

---

[5]  At the subsequent section 366.26 hearing, father denied receiving shock treatment.

The juvenile court held a prejurisdictional status conference on March 1, 2012, which neither parent attended. (The court denied counsels' requests for a continuance, finding that the parents had received due notice of the hearing and no good cause had been shown to continue the matter.) The court sustained the allegations of the section 300 petitions as to Matthew B., M.B., and Phillip B., and the supplemental petition as to C.B. The court terminated the parents' services as to C.B., bypassed services to them as to Matthew B. and M.B. (§ 361.5, subd. (b)(1), (10),(13)), bypassed services to mother as to Phillip B. under the same provisions, and found that father was only an alleged father as to him. The court set a section 366.26 status conference as to all the minors on April 12, 2012, and a section 366.26 hearing on June 28, 2012.

At the April 12, 2012 status conference, the parents did not appear. The juvenile court confirmed the June 28 date for the section 366.26 hearing. Father was served with notice of the hearing at Sacramento County Main Jail.

The section 366.26 report recommended termination of parental rights and the implementation of a permanent plan of adoption for all the minors. The maternal grandmother and stepgrandfather wanted to adopt the three older minors, and Phillip B.'s current caretakers wanted to adopt him. All the minors were generally adoptable, even though the three older minors were a sibling group that included a toddler.

According to the report, the minors had had no contact with the parents since being placed in protective custody. The parents did not call the maternal grandmother and stepgrandfather to ask about the older minors. They had not visited Phillip B. once. They had not contacted the Department to ask about the minors or request visitation.

Matthew B. had had behavior problems in school and at home, for which the grandparents were trying to get him help and counseling. M.B. was doing well, but needed counseling for issues relating to separation from the parents and adoption.

6

Matthew B. and M.B. remained uninterested in visitation with father. Both minors wanted to be adopted by the grandparents.

The two younger minors had no significant problems, and Phillip B. was doing well in his current home. However, he was receiving early intervention services, and continued developmental screening was recommended due to his in utero drug exposure.

On June 28, 2012, the juvenile court granted a continuance so that father could be transported from local custody for the section 366.26 hearing.

On July 5, 2012, father's counsel asked for a contested section 366.26 hearing, stating that the issue would be "parental bond" because Matthew B. and M.B. had spent most of their lives with father. Father said he had not contacted the minors for the last three months because he was in custody for "petty theft burglary." The juvenile court set a pretrial hearing for August 2, 2012, and a contested section 366.26 hearing for August 10.

On August 2, 2012, after father stated that he had signed Phillip B.'s birth certificate and executed a declaration of paternity, the juvenile court found that he was Phillip B.'s presumed father. The court vacated the August 10 hearing and continued the matter to August 23, 2012.

On August 8, 2012, father filed a section 388 petition requesting (1) reunification services as to all the minors, (2) the vacation of the section 366.26 hearing, and (3) an ICPC (Interstate Compact on the Placement of Children) (Fam. Code, § 7900 et seq.) study for the paternal grandmother. In support, he alleged: He had recently been released from custody. While in custody he participated in services, including Narcotics Anonymous/Alcoholics Anonymous (NA/AA) meetings, the "Man Alive" program, and parenting classes, and regularly took psychotropic medications. He was currently reinstating his SSI, which he believed would help him with mental health treatment.

7

He had not known the minors were removed from mother's custody; he thought they remained with her and she had refused to let him see them. He also had not known that Phillip B. was in foster care, and wanted the paternal grandmother considered for placement.

It would be in the best interests of all the minors to be reunited with father and for them all to live as a family. Therefore, it would be in their best interests for him to receive reunification services.

The juvenile court scheduled the section 388 petition to be heard along with the section 366.26 proceeding.

The Department opposed the section 388 petition on the following grounds: Father had already reunified with C.B., but relapsed. Father had not visited the minors since January 2012. Matthew B. and M.B. said they did not want to live with him and did not even want to visit with him for now. The three older minors had been placed with the maternal grandparents since January 2012, and Matthew B. and M.B. wanted the grandparents (who were working to complete their adoption homestudy) to adopt them. Phillip B. was happily placed in a prospective adoptive home with an approved adoption homestudy. The Department had no information as to the paternal grandmother, but a new placement for any of the minors would not be in their best interests. Finally, the Department did not know if father was presently clean and sober. On August 6, 2012, father told the social worker that since his release from jail he had been trying to get into drug treatment and mental health treatment programs; he was not taking any medications, although he had taken " 'like thirteen medications' " in jail; he could not remember all the medications he was given or the purposes for which they were given to him; and he was feeling "anxious."

On August 23, 2012, the juvenile court continued the consolidated section 366.26/ 388 hearing because father was again in local custody.

8

On August 29, 2012, the consolidated section 366.26/388 hearing took place. County counsel informed the juvenile court that father had been convicted of petty theft and resisting an officer, had received a sentence of 126 days, and was due to be released on October 28, 2012.

The juvenile court summarily denied the section 388 petition, finding it did not establish that father had shown changed circumstances or that reopening services would be in the minors' best interests.

As to section 366.26, father testified about the strength of his parental bonds with the minors.[6] However, the juvenile court found he had not shown that any exception to adoption applied. The court therefore terminated parental rights and referred the minors to the Department for adoptive placement.

## DISCUSSION

### I. Section 388 Petition

Father contends the juvenile court abused its discretion by denying his section 388 petition.[7] We disagree.

A petition to modify a juvenile court order under section 388 must factually allege the existence of new evidence or changed circumstances, and that the proposed modification of existing orders will serve the minors' best interests. (*In re Daijah T.*

---

[6] Since father does not attack the juvenile court's orders under section 366.26, we need not give the details of this testimony.

[7] Father does not make any argument as to his request for an ICPC study for the paternal grandmother. Thus we deem that issue abandoned.

Although father's argument heading asserts that the juvenile court denied him due process, he does not make a focused due process argument supported by authority. We therefore do not discuss due process further. (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

(2000) 83 Cal.App.4th 666, 672.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (Cal. Rules of Court, rule 5.570(h)(1)(D).)[8] In assessing the petition, the court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

To decide whether a parent has met his burden under section 388, the juvenile court must consider such factors as the seriousness of the problem that led to the dependency, and the reasons for the problem's continuation; the degree to which the problem may be and has been removed or ameliorated; and the strength of the relative bonds between the dependent child and the child's parents or caretakers. However, this list is not exhaustive. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1229; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532 (*Kimberly F.*).)

When a parent brings a section 388 petition after a section 366.26 hearing has been set, the best interests of the child are of paramount importance. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) Therefore, the juvenile court looks not to the parent's interest in reunification but to the child's need for permanence and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

The petition must be liberally construed in favor of its sufficiency. (Rule 5.570(a).) However, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing. (§ 388, subd. (d); rule 5.570(d), (h)(2); *In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189.)

We review a ruling denying a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 866.) We reverse only if the ruling exceeded the scope of the juvenile court's discretion, or if under all of the evidence, viewed most favorably

---

**8** Further references to rules are to the California Rules of Court.

10

to the ruling, no reasonable judge could have made that ruling. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351; see *Great West Contractors, Inc. v. Irvine Unified School Dist.* (2010) 187 Cal.App.4th 1425, 1459.)

Here, construing the evidence most favorably to the ruling, father's petition did not make a prima facie case either as to changed circumstances or as to the children's best interests. Father alleged only that he had engaged in a few services and taken psychotropic medications while in custody and that he hoped to obtain treatment for his mental health problems after his release. Given his failure to participate in services during the reunification period and the long-standing nature of his mental health and substance abuse problems, the evidence offered by father did not amount to a showing of changed circumstances within the meaning of section 388. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423.)

Furthermore, in considering the entire history of the case (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189), the court could hardly overlook the fact that after father's last release from custody he had committed another offense and was again in custody at the time of the hearing on his section 388 petition. Given this fact, the court could reasonably have concluded that the services father engaged in and the medications he took while previously in custody did not create changed circumstances.

But even if father showed changed circumstances, he did not make a prima facie showing that granting him reunification services would be in the children's best interests. They were placed in homes that were likely to adopt them, and the two who were old enough to express an opinion on the subject clearly wanted to be adopted. When children are adoptable and their caretakers want to adopt them, the court's objective must be to provide them with permanence and stability as soon as possible through adoption. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317; *In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309.)

11

Providing services for father would have frustrated this objective by delaying permanence and stability for the minors indefinitely.

To show why his proposed order would be in the children's best interests, father stated only that biological families should be reunited. But this premise no longer applies once reunification has failed. (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309.)

Father argues that the juvenile court abused its discretion by failing to consider the *Kimberly F.* factors on the record. But "[i]f there is any clear and sufficient finding on which a judgment may rest, it will be presumed in favor of the judgment that the court did rely on it[.]" (*Mayes v. Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 81; see *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583-584.) Therefore, absent evidence that the court did not consider the *Kimberly F.* factors and impliedly find they supported its ruling, we presume the court considered those factors.

So far as father argues that the evidence could be construed to favor him under the *Kimberly F.* factors, this showing is insufficient to meet his burden on appeal because we do not reweigh the evidence under the abuse of discretion test. (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1351.)

Father has shown no error in the denial of his section 388 petition.

## II.  The ICWA Notice Requirements

Father contends the juvenile court failed to give proper notice under the ICWA. We disagree.

When the juvenile court knows or has reason to know that a child involved in a dependency proceeding is an Indian child, the ICWA requires that notice of the proceedings be given to any federally recognized Indian tribe of which the child might be a member or eligible for membership. (25 U.S.C. §§ 1903(8), 1912(a); *In re Robert A.* (2007) 147 Cal.App.4th 982, 989.) Here, the court did so as to C.B. after the parents

12

claimed Indian heritage, and found the ICWA inapplicable only after all the noticed tribes had denied that C.B. was a member or eligible for membership. Father does not contend the court erred in that respect.

Father asserts, however, that after mother named the now deceased K.W. as C.B.'s biological father, the court should have provided K.W.'s name to the tribes, first as to C.B. and then as to the other minors when their proceedings began. Father is mistaken. Respondent's misstatement to the contrary notwithstanding, there is no evidence that K.W. was a Native American, let alone a member of a specific tribe. Thus, K.W.'s alleged biological paternity gave the juvenile court no reason to know that C.B. was or might be an Indian child.

Where the juvenile court has no reason to know that a minor is or might be an Indian child, there is no duty to give the ICWA notice. (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520-1521.) Because there was no information before the court that K.W. had Indian ancestry, the fact that he was alleged to be C.B.'s biological father gave the court no duty to provide new or amended notice to the tribes.

## DISPOSITION

The orders denying father's section 388 petition and finding the ICWA inapplicable are affirmed.

                                                  BUTZ                , J.

We concur:

      NICHOLSON         , Acting P. J.

      MAURO            , J.