Filed 11/19/21  In re G.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re G.H., a Person Coming Under the Juvenile Court Law. | C093882 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>            Plaintiff and Respondent,<br><br>      v.<br><br> M.H. et al.,<br><br>            Defendants and Appellants. | (Super. Ct. No. JD240602) |

C.C. (mother) and M.H. (father), parents of the minor, appeal from the juvenile court's orders terminating parental rights and ordering the minor be placed for adoption. (Welf. & Inst. Code, § 366.26.)[1]  Parents contend the Sacramento County Department of

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Child, Family and Adult Services (Department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) because the Department did not contact the Bureau of Indian Affairs (BIA) or the State Department of Social Services (DSS) to determine if any additional information could be obtained to discover if the minor was an Indian child. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Because the issue on appeal is limited to ICWA compliance, we dispense with a detailed recitation of the underlying facts and procedure.

On May 29, 2020, the Department filed a section 300 petition on behalf of minor G.H. (born in July 2018). In the petition, the Department advised the juvenile court it had asked the parents about the minor's Indian status and the parents gave the Department no reason to believe the child is or may be an Indian child. In the detention report, the Department represented to the court the mother and father denied any Indian heritage.

On June 8, 2020, mother submitted the "Parental Notification of Indian Status" form and checked the box that stated: "I am or may be a member of, or eligible for membership in, [an unknown] federally recognized Indian tribe."

At the initial hearing on June 12, 2020, the juvenile court found "[t]here is insufficient evidence before the Court at this time to determine if this child is an Indian child within the meaning of the Indian Child Welfare Act (ICWA). However, information having been received that this child may have Indian heritage, the Department of Child, Family and Adult Services shall notice any federally recognized tribes and the Bureau of Indian Affairs."

On June 16, 2020, the Department spoke with the minor's maternal grandmother, S.C. S.C. reported the minor's great-grandfather, Abel G. was born in Arizona where S.C. reported "there were a lot of Native American Tribes." She also reported the minor's great-great-grandfather was named Omo Bono G., which she reported is an Indian name. S.C. stated when she was born, both of her grandparents were deceased,

2

but she remembered her mother told her the minor's great-grandmother was named Sarah Garcia and she was an Indian woman.[2]  She said if she found out anything more, she would notify the Department.

The court held a further hearing on June 23, 2020.  At that hearing, counsel represented that mother may have Indian heritage but did not know what tribe.  Mother filed the same parental notification of Indian status form.  Father's form stated he had no Indian heritage as far as he knew.  At the hearing, the court found "there is no reason to know" the minor was an Indian child, however, based on mother's information, "there is a reason to believe the child may be an Indian child."  The court ordered the Department to "make further inquiries regarding the possible Indian status of the child.  Notice shall be provided as required by law if there is reason to know the child is an Indian Child."  The court ordered mother to complete and return the Indian ancestry questionnaire to the Department within two days.

On July 10, 2021, the Department interviewed mother and father again.  Mother stated she believed the minor's maternal great-grandfather, Abel G., may have had Native American heritage, but she was not sure what tribe he was in and he was deceased.  She said she did not know if the maternal great-grandfather was enrolled in a tribe.  Mother directed the Department to the maternal grandmother as she may have more information.  The father denied Indian ancestry.

The Department contacted the maternal grandmother on July 13, 2020.  She repeated the information she had already provided and stated no one else in the family would have any additional information about the family's Native American heritage.  She stated she could try to look up more information on Ancestry.com or order the great-

---

[2]  In conveying the name of Sarah Garcia, the original report refers to maternal great-grandmother, in actuality it appears that this was maternal great-great-grandmother.

great-grandfather's death certificate. The Department reported this information in its jurisdiction/disposition hearing report.

At the September 23, 2020, hearing, the juvenile court stated it had "read and considered the social study, filed herein, [and] orders said report(s) admitted into evidence." The juvenile court adjudged the minor a dependent child of the court, bypassed parents for reunification services, and set the matter for a section 366.26 hearing.

The Department's November 5, 2020, informational memorandum stated: " 'The [Department] is ordered to conduct further inquiry as required by section 224.2[, subdivision] (e) of the Welfare and Institutions Code.' [¶] Per the 8-14-20 Court Report Addendum. [¶] . . . [¶] 'On August 12, 2020, the undersigned spoke with the maternal grandmother to gather updates as to the [ICWA] information as reported in the Jurisdiction/Disposition report . . . . The maternal grandmother reported the name of the maternal great, great grandmother previously reported as Sarah Garcia, should be Transita Garay. The maternal grandmother did not have any updated information as the name(s) of the Tribe(s) in which the mother or the children may be eligible for membership.' Thus, ICWA notice is not required at this time." In its minute order, the juvenile court stated it read and considered this report at the November 13, 2020, hearing. The only finding the court made was service was accomplished in accordance with the law.

In the body of its January 15, 2021, selection and implementation report, the Department reported to the court the ICWA did not apply, but provided the court with no proposed findings on this subject.

On January 26, 2021, the juvenile court held the 366.26 hearing, terminated mother and father's parental rights as to the minor, and referred the minor to DSS for adoptive placement. The court adopted the proposed findings presented by the

4

Department. The court made no explicit finding about the applicability of the ICWA and none of the boxes related to the ICWA on the Judicial Council form were checked.

## DISCUSSION

Mother argues the juvenile court erred because it failed to make findings on the application of the ICWA in this case. Mother and father further argue the Department violated the ICWA because it failed to make an adequate inquiry of the BIA and the DSS to determine if the minor had Indian ancestry, and ultimately to provide notice to any tribes that may have been discovered in that process. We agree the juvenile court erred by not making the requisite ICWA findings. We conclude this error was harmless and affirm the judgment.

## I

### Applicable Law

#### *Indian Child*

"The juvenile court and social services agencies have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child. [Citation.]" (*In re K.M.* (2009) 172 Cal.App.4th 115, 118-119; § 224.2, subd. (c).) An " 'Indian child' " for purposes of the ICWA is defined in the same manner as under federal law, i.e., "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

#### *Reason to Know*

Section 224.2, subdivision (d) provides a juvenile court has reason to know a child involved in a proceeding is an Indian child under any of the following circumstances: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;] [¶] (2) The residence

5

or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d)(1)-(6).)

When the juvenile court knows or has reason to know a child involved in a dependency proceeding is an Indian child, the ICWA requires notice of the proceedings be given to any federally recognized Indian tribe of which the child might be a member or eligible for membership.  (25 U.S.C. §§ 1903(8), 1912(a); *In re Robert A*. (2007) 147 Cal.App.4th 982, 989.)  "At that point, the social worker is required, as soon as practicable, to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility."  (*In re Michael V*. (2016) 3 Cal.App.5th 225, 233; see Cal. Rules of Court, rule 5.481(a)(4)(A).)

"If there is *reason to know* the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an Indian child, the court shall confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership."  (§ 224.2, subd. (g), italics added.)

6

*Reason to Believe*

If the "court, social worker, or probation officer has *reason to believe* that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is *reason to know* that the child is an Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e), italics added.) "There is *reason to believe* a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know" as set forth in section 224.2, subdivision (d). (§ 224.2, subd. (e)(1), italics added.)

When there is "reason to believe" the child is an Indian child, further inquiry is necessary to help determine whether there is "reason to know" the child is an Indian child, including: "(A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3[;] [¶] (B) Contacting the [BIA] and the [DSS] for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility[;] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the [ICWA] [citation]. Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or

7

eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2).) Logistically, as written, these steps must be considered in order. If no tribe is uncovered during the interview of relatives and contact with the BIA or DSS, then obviously no tribe can be noticed. Similarly, if not enough information is obtained from the relatives to require the Department to seek additional information from the BIA or DSS, then no inquiry need be made to those agencies.

The juvenile court may find that the ICWA does not apply when it finds "the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered. (§ 224.2, subds. (i)(2), (g).) Even if the court makes this finding, the Agency and the court have a continuing duty under ICWA, and the court 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' (§ 224.2, subd. (i)(2).)" (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.)

II

Analysis

A. *Findings*

Mother contends the juvenile court failed to make findings the ICWA did not apply or about the Department's satisfaction of their inquiry obligation. Father joins her argument. We agree.

A juvenile court must make findings as to the applicability of ICWA and its failure to do so is error. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.) Findings may be express or implied, however, when they are implied, the record must "reflect that the court considered the issue and decided whether ICWA applies." (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.) For example, in *In re Asia L.*, the court concluded the juvenile court made implicit findings ICWA did not apply when it "expressly found that 'notice had been given pursuant to ICWA' and then proceeded to terminate appellants'

8

parental rights under the usual rather than the heightened ICWA standards." (*In re Asia L.,* at p. 506.)

Another example of implied findings is found in *In re A.M.* (2020) 47 Cal.App.5th 303, 313, 318, where the court found the juvenile court implicitly found the ICWA did not apply when it terminated the mother's parental rights and found the child adoptable. Importantly, however, the juvenile court made previous express findings the ICWA did not apply prior to the section 366.26 hearing and the hearing report noted no new information had been provided.

Here, the record includes the juvenile court's initial determination on June 12, 2020, there was "insufficient evidence before the Court at this time to determine if this child is an Indian child within the meaning of the [ICWA]." The court made this finding after mother submitted her form stating she may be a member of an unknown tribe. Following that first hearing, the Department spoke with the maternal grandmother and ascertained the names of the maternal great-grandfather, great-great-grandmother, great-great-grandfather, and determined the great-grandfather was born in Arizona. After receiving that information, the juvenile court found: "As to the mother is claiming Indian heritage; there is no reason to know the child is an Indian child. However, based on the information provided by the mother there is reason to believe the child may be an Indian child. The Department shall therefore, make further inquiries regarding the possible Indian status of the child. Notice shall be provided as required by law if there is reason to know the child is an Indian child."

After that, the Department again interviewed the parents, and the maternal grandmother, but obtained no new information. In another subsequent interview with the grandmother, the only new information was the true name of the great-great-grandmother. The juvenile court made no findings as to the adequacy of the Department's inquiry or whether ICWA applied or did not apply. While the Department expressed its view in the reports, the juvenile court did not ask counsel any questions

9

concerning this issue or make any findings. As a result, we cannot conclude the juvenile court considered the issue and decided whether the Department's inquiry was adequate and that the minor is not an Indian child. Thus, the juvenile court erred when it did not make these requisite findings. That does not end our inquiry. On this record, we conclude any failure to make the findings was harmless.

B. *Harmless Error*

Pointing to section 224.2, subdivision (e)(2)(B), mother and father argue the failure of the Department to send an inquiry to the BIA and the DSS, with the information they had, requires reversal. Notice issues, however, may be subject to harmless error analysis. (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1410.) An ICWA notice violation may be held harmless, "when, even if notice had been given, the child would not have been found to be an Indian child, and hence the substantive provisions of the ICWA would not have applied." (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162.)

Further, the substantive error raised by mother and father is a failure to meet the standards contained in state law. Any such error " 'must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error.' " (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 653, disapproved of on other grounds by *In re Caden C.* (2021) 11 Cal.5th 614, 637, fn. 6; see also *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739-740.)

Here, following the juvenile court's order there was not a *reason to know*, but only a *reason to believe* the minor may be an Indian child, the Department responded and engaged in additional due diligence. The Department interviewed mother and father again. The Department interviewed the maternal grandmother twice more. After these interviews, the sum total of the information the Department was able to uncover was the names of the great-grandfather and great-great-grandfather and great-great-grandmother, and that the great-grandfather had lived in Arizona where there were multiple Native

10

American tribes. The Department dutifully reported this information to the juvenile court in three separate reports the court indicated it read and considered. This is the same information the court had before it when it had already determined there was no *reason to know,* but only a *reason to believe* the minor may be an Indian child. At no time was any source of information able to identify any possible tribe, state any relative was an enrolled member of a tribe, or identify any relative that had lived on tribal lands. Without any new information, we conclude the juvenile court's failure to make an express or implied finding the Department's inquiry had been adequate was harmless. On this record, there was not enough information to require the Department to make any further inquiry or provide any additional notice.

The inquiry required by section 224.2, subdivision (e)(2) is a sequential three-step process. The first step, required in every case where there is reason to believe the minor may be an Indian child, is to the interview of the parents, Indian custodian (if any), and extended family members to gather relevant information. (§ 224.2, subd. (e)(2)(A).) Only if this information provides something useful in determining whether the child may be an Indian child or may result in additional information being uncovered by the BIA or the DSS, must the Department take the next step of contacting the BIA and the DSS to see what additional information they can provide. (§ 224.2, subd. (e)(2)(B).) The third step requires the Department to contact tribes that may reasonably be expected to have information regarding the child's membership to obtain additional information. (§ 224.2, subd. (e)(2)(C).) Of course, in order to contact these relevant tribes, the Department must have the name or some inkling of the name of those tribes from some source -- presumably the inquiry it completed in steps one and two. Likewise, in order to require the Department to contact the BIA or DSS, the Department must have some information that the BIA or DSS could use to provide them with information to identify tribes.

The instant case is similar to *In re J.S.* (2021) 62 Cal.App.5th 678, 689. There, the father indicated he may have Indian ancestry and the mother reported she was nearly 100

11

percent certain none of her relatives had been eligible or enrolled in any tribe. (*Ibid.*) She did, however, receive results from Ancestry.com claiming she had approximately 54 percent " 'Native American lineage/heritage.' " (*Ibid.*) In rejecting the claim the Department failed to conduct a proper inquiry, the court noted, "[w]ithout the identity of a tribe, let alone a federally recognized one, or at least a specific geographic area of possible ancestry origin, the BIA could not have assisted the Department in identifying the tribal agent for any relevant federally recognized tribes." (*Ibid.*) As a result, the court concluded, "[t]ransmission of a notice to the BIA would have been an idle act. (Civ. Code[,] § 3532 ['[t]he law neither does nor requires idle acts'].) Without more information, the Department also could not send notices to any tribes." (*Id.* at p. 690, fn. omitted.) The court concluded the Department conducted an adequate and proper further inquiry under section 224.2, subdivision (e). (*In re J.S.,* at p. 689.)

Here, the information obtained from the parents and the maternal grandmother was not sufficient to require the Department to take the next step of contacting the BIA or DSS. The Department had three names: one great-grandparent and two great-great-grandparents. It also had a vague notion the maternal great-grandfather of the minor had lived in Arizona. The Department had exhausted the sources of information from the minor's relatives; the maternal grandmother stated no one else in the family had any information. We conclude that knowledge of three names and the fact one of those persons might have lived in Arizona where there are Native American tribes is not enough to trigger the requirement the Department send an inquiry to the BIA or DSS.

The information obtained by the Department is precisely the type of "vague information or ' "family lore" ' indicating a child ' "may" ' have Indian ancestry insufficient to require notice." (*In re A.M., supra*, 47 Cal.App.5th at p. 322.) In *In re A.M.*, the "only specific information Mother provided was a statement that she was told and believed that she may have Indian ancestry with the Blackfeet and Cherokee tribes but was not registered. She also listed her grandfather, C.M., as having possible Indian

heritage but never provided additional information concerning her Indian ancestry."
(*Ibid.*) As noted by the court, "[t]here is no need for further inquiry if no one has offered information that would give the court or [county] reason to believe that a child might be an Indian child." (*Id.* at p. 323.) The court also noted the department was not required to cast about for investigative leads. As a result, the court concluded this was not enough information to require the department to make further inquiry. (*Ibid.*)

On this record, we conclude the failure of the juvenile court to expressly find the minor is not an Indian child and the substantive provisions of the ICWA did not apply is harmless.

DISPOSITION

The juvenile court's orders are affirmed.


         /s/

         HOCH, J.



We concur:


/s/

RAYE, P. J.



/s/

DUARTE, J.


13