Filed 10/20/22  In re T.F.P. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re T.F.P., a Person Coming Under Juvenile Court Law. | B318437 |
| _____ | (Los Angeles County Super. Ct. No. CK94393D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | **ORDER MODIFYING OPINION** |
| v. | |
| M.F. et al., | [There is No Change in Judgment] |
| Defendants and Appellants. | |

BY THE COURT:

It is ordered that the opinion authored by Presiding Justice Rubin and filed herein on October 17, 2022, is modified as follows:

Page 2, first paragraph, last sentence which starts with "This opinion . . ." is deleted and replaced with "This opinion and Justice Baker's concurrence affirm the termination of parental rights and conclude substantial evidence supports the juvenile court's ICWA finding."

Page 2, second paragraph, last sentence is deleted and replaced with "I focus my discussion on the full siblings."

Page 3, second paragraph, the two instances of "N.P." are deleted and replaced with "N.F."

Page 7, second paragraph, third sentence that starts with "However, this error . . ." is deleted and replaced with "However, this error was not prejudicial, and substantial evidence supported the juvenile court's ICWA finding."

Page 9, first full paragraph, first sentence, "N.P." is deleted and replaced with "N.F."

There is no change in judgment.

—————————————
RUBIN, P. J.

Filed 10/17/22 In re T.F.P. CA2/5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re T.F.P., a Person Coming Under Juvenile Court Law. | B318437 |
| _____ | (Los Angeles County Super. Ct. No. CK94393D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| M.F. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Ser, Judge.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant Mother.

Pamela Deavours, under appointment by the Court of Appeal, for Defendant and Appellant Father.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

## *INTRODUCTION*

The parents appeal from termination of their parental rights to their son. They argue that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with its initial inquiry duties under Welfare and Institutions Code section 224.2, subdivision (b)—the California statute implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).[1] This opinion and Justice Baker's concurrence affirms the termination of parental rights and concludes substantial evidence supports the juvenile court's ICWA finding.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### *1.   Siblings' Dependency History*

The parents have been involved in dependency proceedings since 2012, when they engaged in domestic violence in the presence of son's half sibling. Son (born in 2016) has four older siblings (two are full siblings); all were involved in dependency cases. I focus our discussion on the full siblings.

In November 2014, the juvenile court sustained section 300 petitions on behalf of full sibling J.P. (born 2013; case No. CK94393B) and full sibling N.F. (born 2014; case No. CK94393C) based on mother pulling hair out of their half-sibling's scalp and wrapping a belt around the half-sibling's neck and dragging him by the neck, inflicting deep lacerations and abrasions. At an August 27, 2014 hearing, the juvenile court found: "The Court does not have a reason to know that [J.P or N.F.] is an Indian Child, as defined under ICWA, and does not order notice to any

---

[1]   All further undesignated statutory references are to the Welfare and Institutions Code.

tribe or the [Bureau of Indian Affairs]. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status."[2]

In 2018, the court terminated parental rights to these siblings. The parents appealed from the denial of mother's section 388 petition and termination of parental rights. Each appeal was dismissed after counsel filed briefs pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, raising no issues.

## 2. *Son's Dependency Case*

On November 23, 2016, DCFS filed a section 300 petition on behalf of newborn son, alleging the child was at substantial risk of suffering serious physical harm based on the parents' domestic violence history, father's substance abuse history, and the parents' physical abuse of son's older half-sibling. The detention report acknowledged the parents' three pending dependency cases, in which the parents had not reunited with son's two older full-siblings (J.P. and N.P.) and older half sibling. The report stated: "The father and mother have previously stated he may have Cherokee heritage. Following notice to the tribes, Secretary of the Interior, and Bureau of Indian Affairs, This Court found on 08/27/2014 that a sibling, [N.P.], is not an Indian Child under ICWA."[3] That same day, at the arraignment

---

[2]    DCFS requested this court to take judicial notice of the minute order from J.P. and N.F.'s August 27, 2014 dependency hearing, where the court found ICWA did not apply. Parents' counsel does not object. The request is granted. (See Evid. Code, § 452, subd. (d).)

[3]    It is unclear whether notice was actually given to the tribes, given that the August 27, 2014 minute order stated: "The Court . . . does not order notice to any tribe or the BIA."

and detention hearing, the court asked and father indicated he did not have Native American Ancestry.

On November 28, 2016, the parents filed "Parental Notification of Indian Status" (ICWA-020) forms. Both parents checked a box indicating they had no Indian ancestry as far as they knew, and declared under the penalty of perjury that this information was true and correct. That same day, the juvenile court held a detention hearing, and found there was no reason to know son was an "Indian child" as defined by federal and state law. The court ordered the parents to keep their attorneys, DCFS, and the court "aware of any new information relating to possible ICWA status."

In July 2017, the juvenile court found jurisdiction over son based on its findings that the parents' domestic violence and father's substance abuse placed the child at substantial risk of suffering serious physical harm. At a January 2018 disposition hearing, the juvenile court removed son from parental custody. The court granted family reunification services.

In December 2018, the juvenile court returned son and his half sibling to mother's physical custody, granted family maintenance services to mother and enhancement services to father, and continued its jurisdiction over son and his half sibling. In August 2019, DCFS detained both children from mother's custody and filed a section 342 petition. The petition (amended in September 2019) alleged that mother physically and emotionally abused then-two-year-old son, hitting him on the butt and pushing son's face into his urine when he had toilet training accidents. The petition also alleged that mother hit son's twelve-year-old half sibling with a belt and hit his face with her fists, causing abrasions and bruises.

4

In August 2019, in conjunction with the section 342 petition, DCFS asked mother whether son had Indian ancestry and mother replied "Yes." DCFS then filed an ICWA-010(A) form, which stated "The child may have Indian ancestry." In the detention report, after DCFS noted mother replied affirmatively that the children may have Indian ancestry, DCFS noted: "During the PRC hearing held on 12/10/2012 on behalf of [the half sibling], Juvenile Dependency Court found 'Court has no reason to believe this case comes under the ICWA statute.' This order was reiterated at the Adjudication/Disposition hearing held on 01/16/2013. [¶] At the Detention hearing held on 11/23/2016 on behalf of [son], Juvenile Dependency Court found 'The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA.'"

Three weeks later, the ICWA-010(A) form attached to the amended section 342 supplemental petition (dated September 10, 2019) stated an Indian child inquiry was made and the child has no known Indian ancestry. The record does not provide details about the inquiry.

In July 2020, the juvenile court found mother had physically and emotionally abused son. In September 2020, the juvenile court removed son from parental custody, denied both parents family reunification services, and scheduled a section 366.26 hearing to select son's permanent plan.

On February 4, 2022, the juvenile court terminated parental rights to son. The court found that son was adoptable, no exception to adoption applied, and there was no reason to know the child was an Indian child. The parents appealed.

5

## *DISCUSSION*

The parents join in each other's briefs and assert DCFS failed to comply with its duty to inquire with extended family members about Indian heritage.

### 1.    *ICWA and the Standard of Review*

The juvenile court and DCFS have an affirmative and continuing duty under ICWA and related California law to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10–11.)  The scope of the duty of inquiry is defined in regulations promulgated under ICWA (see 25 C.F.R. § 23.107 et seq. (2020)), California statutes, and rules of court.  (*In re T.G.* (2020) 58 Cal.App.5th 275, 290–291 (*T.G.*).)  Here, courts apply the statutes in effect in February 2021, when the section 366.26 hearing took place.  (*In re A.M.* (2020) 47 Cal.App.5th 303, 321.)

By statute, DCFS's initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."  (§ 224.2, subd. (b).)  The court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child."  (*Id.* at subd. (c).)  Part of the initial inquiry includes requiring each party to complete the ICWA-020 form. (Cal. Rules of Court, rule 5.481(a)(2)(C).)  When there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is required.  (§ 224.2, subd. (e); *T.G., supra,* 58 Cal.App.5th at p. 290, fn. 14.)

6

"We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) On undisputed facts, the appellate court makes an independent determination whether ICWA's requirements have been satisfied. (*In re D.F.* (2020) 55 Cal.App.5th 558, 565.)

**2.** ***Substantial Evidence Supports the Court's Finding***

The parents contend that DCFS failed to inquire of extended family members (maternal and paternal aunts, cousins, and grandmothers are mentioned throughout the record) as required by section 224.2, subdivision (b). (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) However, this error was not prejudicial, and that substantial evidence supported the juvenile court's ICWA finding. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777, review granted Sept. 21, 2022, S275578 ["Where, as here, there is no doubt that the Department's inquiry was erroneous, our examination as to whether substantial evidence supports the juvenile court's ICWA finding ends up turning on whether that error by the Department was harmless—in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly."].)

Son's case was part of his siblings' ongoing dependency proceedings—sharing the same juvenile court case No. CK94393. In 2014, the court found there was no reason to know either full sibling was an Indian child, as defined under ICWA.[4] This

---

[4] It is correct, as Justice Moor's opinion points out, that the ICWA inquiry requirements changed in 2019 after DCFS

7

finding went unchallenged by the parents (despite multiple appeals), and in 2018, the court terminated parental rights to those siblings. In the interim, in 2016, when son was detained after birth, the parents reiterated that they had no Native American heritage.

The trial court reasonably relied on its prior findings within the related dependency cases when it concluded there was no reason to know son was an Indian child. Although the record is inconsistent as to whether the tribes and BIA were contacted in the full sibling cases, the 2016 detention report acknowledges that the parents had reported Cherokee heritage and that it was investigated. The parents never contested the court's finding that ICWA was inapplicable at any time prior to termination of parental rights. And in the siblings' cases, parents filed an appeal from the termination of parental rights, raising no issues. I must infer that the court found Mother's 2019 "yes" response to DCFS's ICWA inquiry not credible given the parents' previous statements and the prior investigation of Native American heritage claims.

The parents cite *In re Robert A.* (2007) 147 Cal.App.4th 982 (*Robert A.*), to argue that the trial court cannot rely on ICWA findings for siblings. In that case, the appellate court rejected ICWA notices from a half sibling's case that the department provided on appeal because the notices postdated the father's notice of appeal and because the half sibling's dependency case was heard by the juvenile court in a different city and by a

---

completed ICWA inquiry in the sibling cases. However, the court's standard for assessing whether ICWA applies has not changed in a manner that affects the current appeal. (*In re A.M., supra,* 47 Cal.App.5th at p. 315.)

8

different judicial officer.  (*Id*. at p. 989.)  *In re Robert A.* is distinguishable as the present appeal involves ICWA inquiry that occurred in advance of the court's appealed finding and the full sibling's case was heard by the same court (in fact, the cases overlapped and had the same case number).[5]  This case more closely resembles *In re E.W.* (2009) 170 Cal.App.4th 396, 401, in which the appellate court concluded any ICWA notice error was harmless where DCFS completed tribal investigations for a sibling in a related case (who shared the same father whose heritage was at issue in the appeal) and was found not to be an Indian child.  The court explained that since the investigation would yield the same results as the sibling case, "Even a conditional reversal with limited remand would be an empty formality and a waste of ever-more-scarce judicial resources." (*Id*. at pp. 401–402.)  The same rationale applies here.

To the extent the parents argue the court did not take judicial notice of the prior ICWA findings in J.P. and N.P.'s cases, the detention report provided this information to the court. There is nothing in the record to suggest the juvenile court failed to consider the information presented to it.   Significantly, it was the same court that made those findings within this same group of cases, and presumably that court was aware of its findings when the issue arose for son.

Father's brief also asserts that parents may have been intimidated by the trial court's earlier findings of no Indian heritage when parents retracted claims of Native American

---

[5]     *In re M.E.* (2022) 79 Cal.App.5th 73,78 is likewise distinguishable as the ICWA findings came from a sibling case in a different county and court.

9

ancestry. This contention is fanciful, and clearly not what happened here as mother again asserted heritage in 2019.

Substantial evidence supports the trial court's finding that there was no Native American heritage, and, under the circumstances presented here, DCFS's failure to inquire with extended family members was harmless. (*In re Darian R.* (2022) 75 Cal.App.5th 502, 509–510 [inquiry error harmless where the juvenile court previously found that it did not have reason to know full siblings were Indian children].) The juvenile court's ICWA finding was supported by substantial evidence based on the parents' repeated denials of Native American heritage and the previous ICWA findings in the full siblings' cases.

### DISPOSITION

The order terminating parental rights to son is affirmed.

RUBIN, P. J.

10

In re T.F.P.
B318437


BAKER, J., Concurring


I agree we should affirm the juvenile court's order, but not on harmlessness grounds. In my view, there is substantial evidence supporting the juvenile court's Indian Child Welfare Act-related finding. (*In re H.V.* (2022) 75 Cal.App.5th 433, 441 (dis. opn. of Baker, J.); see also *In re Ezequiel G.* (2022) 81 Cal.App.5th 984.)


BAKER, J.

MOOR, J., Dissenting.

I disagree with my colleagues that substantial evidence supports the juvenile court's February 4, 2022 determination under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), and with the view of the majority that the order of the juvenile court should be affirmed. The juvenile court's ICWA finding constitutes prejudicial error, and I would conditionally reverse and remand the matter for compliance with ICWA.

In August 2019, the Department of Children and Family Services (the Department) asked mother about the possibility that son had Indian ancestry, and she responded "[y]es." There is no cognizable evidence that, either before or after mother's assertion, the Department made any effort to ask mother's extended family members about mother's assertion specifically, or about the possibility of Indian ancestry generally. The lead opinion acknowledges as much—stating that "DCFS failed to inquire of extended family members (maternal and paternal aunts, cousins, and grandmothers are mentioned throughout the record) as required by [Welfare and Institutions Code] section 224.2, subdivision (b)"—but concludes that "this error was not prejudicial." (Lead opn. *ante*, at p. 7.) The opinion offers two reasons to overlook the error, neither of which has merit.

First, the lead opinion relies on prior ICWA findings pertaining to the minor's older siblings, citing to *In re Darian R.* (2022) 75 Cal.App.5th 502. However, the juvenile

court's earlier ICWA findings were based on prior law; since the time of those findings, the law has been amended expressly to require inquiry of extended family members. (Stats. 2018, ch. 833, § 5.) As explained in *In re J.C.* (2022) 77 Cal.App.5th 70, 82–83, "Between the [ICWA] findings in the prior case [involving siblings] and those in the later case, however, the law governing the duty to inquire under ICWA changed: The Legislature amended [Welfare and Institutions Code] sections 224.2 and 224.3, effective January 1, 2019, to require inquiry of extended family members." "The court in *In re Darian R.* did not consider whether applying these new laws, which expanded the duty of inquiry, would necessarily produce the same result." (*Ibid.*) In the circumstances present here, it would be flawed reasoning to blindly rely on ICWA determinations made prior to 2019, even as to minor's siblings.

State law imposes on the Department "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a).) After the statutory changes that took effect in 2019, the Department's "continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The duties of initial and further inquiry each require certain efforts to contact and inquire of extended family members whether they have any information about the possibility of Indian ancestry. (§ 224.2, subds. (b), (e)(2)(A).) The juvenile court must

2

determine whether the Department has asked extended relatives if they have any information about Indian ancestry even when both parents have denied any such possibility. (*In re J.C.*, *supra*, 77 Cal.App.5th at pp. 79–80.) Without evidence of adequate inquiry efforts, the juvenile court errs in finding ICWA inapplicable. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408 ["the court may not find that ICWA does not apply when the absence of evidence that a child is an Indian child results from [the Department's] inquiry that is not proper, adequate, or demonstrative of due diligence"].) Because we apply the law in effect at the time of the ICWA finding, the record before us does not support a finding that the prior ICWA determinations resulted from a proper and adequate inquiry, demonstrative of due diligence.

Second, the lead opinion shifts the focus away from the Department's wholesale failure of inquiry and toward the credibility of mother's assertion of possible Indian ancestry and the parents' failure to challenge the earlier ICWA findings on appeal. Interpreting the juvenile court's ruling as an implicit comment on mother's credibility is at best strained, if not incorrect. The lack of an earlier appeal demonstrates nothing, since the governing law was different, as already explained. Regardless, questions of credibility or earlier appeals are mostly beside the point: no matter what information one parent provides regarding possible Indian ancestry, credible or not, the Department and the juvenile court cannot simply choose to ignore gathering readily obtainable information from other relatives and persons

3

specified in the statute. As Division Seven explained in *In re T.G.* (2020) 58 Cal.App.5th 275, 295, initial information provided by family members "will often be inadequate to ensure the necessary protection of the rights and cultural heritage of Indian children, Indian families and Indian tribes. [Citation.] General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved." "[I]t is essential to the enforcement of the court's and child protective agency's 'affirmative and continuing duty to inquire' to construe broadly the duty to make further inquiry." (*Ibid.*)

On the record presented here, because it appears there are available extended family members who may have readily obtainable information but who were never asked about possible Indian ancestry, I would find court's ICWA determination to be prejudicial error requiring a conditional reversal and remand for compliance with ICWA's requirements. (Welf. & Inst. Code, § 224.2; see, e.g., *In re J.C.*, *supra*, 77 Cal.App.5th at pp. 78–84.)


MOOR, J.


4