[No. D048994. Fourth Dist., Div. One. Jan. 25, 2007.]

In re ROBERT A., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
ROBERT A., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

_____

\*The opinion filed January 25, 2007, is ordered certified for publication with the exception of part I.

## Counsel

Sharon S. Rollo, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, John E. Philips and Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.

Michael D. Randall, under appointment by the Court of Appeal, for Minor.

OPINION

**IRION, J.**—Robert A. (Father) appeals an order under Welfare and Institutions Code[1] section 387 removing his son Robert A. (Robert) from his custody. Father contends the allegations of the section 387 or supplemental petition did not state a basis for jurisdiction. Father also contends the evidence was insufficient to support the juvenile court's findings that (1) the previous disposition had not been effective, and (2) it would be detrimental to Robert to remain in Father's custody. Additionally, Father contends the court did not comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).

We agree ICWA noncompliance requires reversal and remand for the purpose of securing ICWA compliance. Otherwise, we find no error.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert is the son of Father and Roberta A., who were married but living separately at all relevant times.[2] In November 2004, Robert, then 10 years old, was living with Father in a motel room.

On November 24, police executed a search warrant and found methamphetamine in various places—including some within Robert's reach—along with marijuana, pornography and switchblade knives. Father told police he used methamphetamine "on and off" for several years. Father said all of the methamphetamine found was his—including that found in the purse of his girlfriend.[3] Police arrested Father and his girlfriend for possession of a controlled substance.

Father told a social worker that his grandfather was a "full-blooded Cherokee" Indian from Louisiana, but neither he nor Robert were registered tribal members.

On November 30, the San Diego County Health and Human Services Agency (Agency) filed a dependency petition on behalf of Robert, alleging he

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Roberta is not a party to this appeal and will be mentioned only when relevant to the issues that Father raises.

[3] Father subsequently recanted his admission that the methamphetamine belonged to him. He told a social worker the methamphetamine belonged to a friend, and the reason he did not tell this to the police was that he thought they would not believe him. Father also told the social worker that the marijuana was for his personal use and that it helps relieve the aches and pains of his shoulder, which was injured during work. Father, then 43 years old, admitted smoking marijuana since he was 10 years old. Father did not believe he had a substance abuse problem.

was at substantial risk of harm because of Father's excessive use of methamphetamine and marijuana. (§ 300, subd. (b).)

Father did not appear at the detention hearing. The court gave Agency discretion to place Robert with Roberta with the concurrence of the child's counsel. The court found ICWA did not apply.

On December 21, the court sustained the petition. By this time, Robert was living with Roberta, and Agency's recommendation was that the child be placed with her. With respect to ICWA, Agency indicated ICWA was not applicable because Robert was going to be placed with Roberta,[4] and Robert's counsel did not object.

On January 12, 2005, the court declared Robert a dependent child, removed him from Father's custody, and placed him with Roberta. The court ordered Father, who did not attend the hearing, and Roberta to comply with their case plans. Father's case plan required him to participate in individual therapy, complete a parenting class, submit to an evaluation by the Substance Abuse Recovery Management System program (SARMS), enroll in a drug treatment program and undergo drug testing.

Later that month, Father told a social worker that he wanted to reunify with Robert, but did not believe he needed to comply with the case plan. Father had no further contact with Agency.

On July 5, the court found Roberta had not made substantive progress with the provisions of her case plan. The court ordered six more months of services.

Agency reported that in July, Roberta and Robert moved into a motel. The social worker noted that Roberta and Robert lived in either a motel or the maternal grandmother's apartment during the next six months. Roberta and Robert told the social worker that Father had chosen not to have regular contact with Robert. The social worker opined that regardless of Robert's living condition, he appeared to be receiving adequate care. "The child always appears happy, well groomed, well fed and attends school regularly," the social worker wrote.

On January 17, 2006, the court ordered six more months of services.

In March, Agency learned that Robert had been living with Father rather than Roberta in contravention of the court's order that removed Robert from

---

[4] See title 25 of the United States Code section 1912(a), which provides that Agency's obligation to comply with ICWA notice requirements takes effect when Agency is seeking foster care placement of the child or termination of parental rights.

Father's custody and placed him with Roberta. The social worker reported that Robert started living with Father shortly after the court had made that order. The social worker had monthly contacts with Robert at his school. Roberta and Robert lied to the social worker about Robert's living with the maternal grandmother. Roberta had been homeless for several months, living in her car and in sober living facilities. The El Cajon Police Department performed a child welfare check on Father's home and found it to be clean and with adequate food. Police did not observe any drugs or drug activity.

Because it appeared that Father had been able to meet Robert's needs, Agency recommended that Robert be placed with Father.

At a special hearing on May 1, the court placed Robert with Father and ordered him to contact SARMS within 72 hours for an evaluation.[5]

Father, however, did not contact SARMS and continued to refuse to participate in case plan services.

On June 23, Agency filed a supplemental petition (§ 387) on behalf of Robert, alleging the previous disposition of the court—the May 1 order placing the child with Father—had not been effective in protecting Robert. The petition alleged Father's substance abuse problems remained untreated, Father remained noncompliant with his reunification plan and Father did not follow the court's May 1 order to contact SARMS within 72 hours. The petition sought to have Robert placed in a foster home.

The court found a prima facie showing had been made and issued a pick up and detain order for Robert. The court ordered Robert be detained at Polinsky Children's Center or an approved foster home.

In an addendum report dated July 11, Agency recommended services for Father, who still had not contacted SARMS for an evaluation, be terminated.[6]

On July 11, the parties stipulated that if called as a witness, the social worker would testify that: (1) Father was convicted of a drug-related crime stemming from the incident in which Robert was removed from his custody in 2004; (2) the criminal court sentenced Father to perform community service, imposed fines and placed him on summary probation; and (3) Father had never been treated for his substance abuse.

---

[5] Agency did not file a section 388 or section 387 petition to change Robert's placement, but the parties waived formal filing of a petition.

[6] Agency recommended services be offered to Roberta, who had recently started substance abuse treatment.

The court sustained the section 387 petition. Father's counsel told the court that Father wanted to participate in services and was now willing to contact SARMS. Agency's counsel countered that Father had technically received services for 20 months and never participated in any of them. The court terminated services to Father and continued services for Roberta.

## DISCUSSION

### I.  *Section 387**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### II.  *ICWA*

Father contends Agency did not comply with ICWA even though Agency was on notice from the beginning of the case that he had Cherokee heritage. We agree, and find the case must be remanded for the limited purpose of securing compliance with ICWA.

■  In 1978, Congress enacted ICWA to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) ICWA allows a tribe to intervene in dependency proceedings involving an Indian child because the law presumes it is in the child's best interests to retain tribal ties and heritage and that it is in the tribe's interest to preserve future generations. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469 [99 Cal.Rptr.2d 688].)

■  ICWA sets forth specific notice requirements: "[W]here the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) If the identity of the tribe cannot be determined, notice must be given to the Bureau of Indian Affairs. (*Ibid.*; *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253 [126 Cal.Rptr.2d 639].)

The Indian tribe determines whether the child is an Indian child. (*In re Desiree F., supra,* 83 Cal.App.4th at p. 470.) " 'A tribe's determination that the child is or is not a member of or eligible for membership in the tribe is conclusive.' " (*Dwayne P. v. Superior Court, supra,* 103 Cal.App.4th at p. 255.)

---

*See footnote, *ante,* page 982.

Notice must be sent whenever there is reason to believe the child may be an Indian child. (*In re Desiree F.*, *supra*, 83 Cal.App.4th at p. 471.) "[T]he juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848 [131 Cal.Rptr.2d 256].)

■ Because " 'failure to give proper notice of a dependency proceeding to a tribe with which the dependent child may be affiliated forecloses participation by the tribe, [ICWA] notice requirements are strictly construed.' " (*In re Karla C.* (2003) 113 Cal.App.4th 166, 174 [6 Cal.Rptr.3d 205].) The notice sent to the Indian tribes must contain enough identifying information to be meaningful. (*Id.* at p. 175.) A "social worker has 'a duty to inquire about and obtain, if possible, all of the information about a child's family history' " required under regulations promulgated to enforce ICWA. (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1116 [13 Cal.Rptr.3d 606].)

To enable the juvenile court to review whether sufficient information was supplied, Agency must file with the court ICWA notice, return receipts and responses received from the tribes. (*In re Karla C.*, *supra*, 113 Cal.App.4th at pp. 175, 178–179.)

The notice requirements of ICWA are mandatory and cannot be waived by the parties. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 707 [127 Cal.Rptr.2d 54].)

Agency's argument below that ICWA notice was not necessary because foster care placement was not being sought (see fn. 4 & accompanying text, *ante*) is now moot.

On appeal, Agency concedes that it should have provided ICWA notice when Robert was removed from parental custody pursuant to the section 387 petition. Nonetheless, Agency argues the error was harmless.

Agency does so based on its motion to augment the record with ICWA notices and documents filed in the separate dependency case of Robert's half sibling.[8] However, the half sibling's dependency case was heard by the juvenile court in El Cajon and presided over by a different judicial officer than the one who presided over Robert's case. Further, Father's notice of appeal in Robert's case predated ICWA notices in the half sibling's case. The orders that are challenged in this appeal were issued two months before

---

[8] Both Robert and the half sibling have the same biological father.

ICWA notices in the half sibling's case were mailed to the Indian tribes. Also, ICWA documents from the half sibling's case were not filed in Robert's dependency case.[9]

■ We deny Agency's motion to augment the record. Appellate courts rarely accept postjudgment evidence or evidence that is developed after the challenged ruling is made. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405, 413–414 [2 Cal.Rptr.3d 683, 73 P.3d 541].) This is so in part because an appellate court reviews the correctness of a record that was before the trial court at the time it made its ruling. (*Id.* at p. 405.) Because ICWA documents from the half sibling's case were not before the juvenile court at the time of the proceedings in question nor part of the juvenile court case file, it is inappropriate to augment the record with them. (See *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 703–704 [127 Cal.Rptr.2d 54].) "Making the appellate court the trier of fact is not the solution." (*Id.* at p. 703.) (See fn. 9, *ante.*) "[I]t is up to the juvenile court to review the information concerning the notice given, the timing of the notice, and the response of the tribe, so that it may make a determination as to the applicability of ICWA, and thereafter comply with all of its provisions, if applicable." (*Id.* at p. 705.)

■ Moreover, we reject Agency's attempt to bootstrap this case to the half sibling's case for ICWA purposes and thereby find the admitted ICWA error here was harmless. It is important to not lose sight of the fact that ICWA notices in separate dependency cases are not fungible evidence—even when the separate cases involve half siblings who share the same parent with Indian heritage. Agency had the duty in Robert's case to provide ICWA notice to the Cherokee tribes to allow the tribes to determine if Robert is an Indian child. Agency also had the duty to file with the juvenile court, which heard Robert's case, those notices, any responses it received and proof of required postal receipts to allow the court to determine if there was proper and adequate notice before deciding the ultimate issue—whether ICWA applied. Agency did none of these things in Robert's case and therefore the court's finding that ICWA did not apply cannot stand.

Accordingly, the case must be remanded with directions that Agency and the court comply with ICWA in accordance to ICWA statute and case law interpreting it.

---

[9] The augment request did not include a finding by the court in the half sibling's dependency case concerning whether it found the notices met the requirements of ICWA. Therefore, the proposed augment is of ICWA notices that have never been reviewed below for ICWA compliance.

## DISPOSITION

The section 387 order is reversed and the matter is remanded to the juvenile court with directions to order Agency to comply with the notice provisions of ICWA, the relevant case law interpreting ICWA and the views expressed in this opinion, and to file all required documentation with the juvenile court for the court's inspection. If, after proper inquiry and notice, a tribe claims that Robert is an Indian child, the juvenile court shall proceed in conformity with all provisions of ICWA. If, on the other hand, no response is received or no tribe claims that Robert is an Indian child, the orders shall be reinstated.

McDonald, J., concurred. Huffman, Acting P. J., concurred in the result.