Filed 3/18/21  In re T.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re T.C., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E076035 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ119250) |
| v. | OPINION |
| L.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Reversed and remanded with directions.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Anna M. Marchand and Carol D. Perez, Deputy County Counsels, for Plaintiff and Respondent.

1

L.C. (Mother) appeals from the juvenile court's order terminating parental rights to her son, T.C. Mother argues that the court and the Riverside County Department of Public Social Services (DPSS) failed to comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related state law. We conclude that further ICWA inquiry is required. We therefore conditionally reverse the order terminating parental rights and remand the matter for further proceedings.

BACKGROUND

Mother and R.C. (Father) have a dependency history related to T.C.'s older sister. In 2010, the juvenile court took jurisdiction over the sister on the basis of Mother's substance abuse while pregnant and Father's neglect. The court terminated their parental rights to the sister in 2011.

In March 2019, DPSS investigated allegations of general neglect as to six-year-old T.C. DPSS determined that both parents were using methamphetamine, and it held a child and family team meeting. The parents enrolled in substance abuse classes and mental health services, and they drug tested negative when randomly screened. DPSS closed the investigation as inconclusive in May 2019.

The present case began when DPSS received a referral in October 2019 alleging that T.C. often missed school or arrived late, and on the day of the referral, the parents had been late to pick up T.C. from school. During the social worker's investigation, both parents admitted to using methamphetamine. DPSS filed a petition under Welfare and Institutions Code section 300, subdivision (b) (unlabeled statutory citations refer to this code), alleging that the parents had a chronic and unresolved history of abusing

2

controlled substances, including methamphetamine; that the parents had neglected T.C.'s health, safety, and educational needs; that Father had a criminal history; and that the parents had a prior dependency case in which their parental rights to T.C.'s sister were terminated.

Although Mother initially reported that she had Cherokee ancestry, she later withdrew that claim. Her arguments on appeal relate solely to Father's claim of Indian ancestry. In a section of the detention report entitled "Indian Child Welfare Act Status," the social worker stated that Father reported his father (paternal grandfather) "is a Cherokee Indian." (Some capitalization, boldface, and underscoring omitted.) In the section entitled "Reason for Hearing," the social worker stated that Father "reported the paternal grandfather had Native American Ancestry and believed it was Cherokee." (Some capitalization, boldface, and underscoring omitted.) The detention report stated that ICWA may apply.

At the detention hearing, the court detained T.C. from the parents. As Father's counsel stated his appearance, he also stated that Father had "American Indian heritage through his father" and that counsel would be providing paternal grandfather's date of birth to DPSS. The court later noted that the parents had been provided with Judicial Council form ICWA-020 (Parental Notification of Indian Status). The court ordered the parents to complete the form and submit it before leaving the courthouse that day. The court found that DPSS had sufficiently inquired into T.C.'s possible Indian ancestry and that ICWA may apply.

On Father's ICWA-020 form, he checked the box stating, "I may have Indian ancestry," and he wrote in relevant part, "Cherokee through my father."

Before the jurisdiction and disposition hearing, DPSS sent an ICWA notice to the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, and the Bureau of Indian Affairs. The notice contained the biographical information for the parents, the maternal grandmother, both paternal grandparents, and paternal grandfather's father (paternal great-grandfather). The biographical information for the three other paternal great-grandparents was listed as "[u]nknown." As to father, paternal grandfather, and paternal great-grandfather, the ICWA notice indicated that they had Cherokee ancestry.

In a section for "[a]dditional [i]nformation," the notice stated that the social worker had interviewed the parents at the detention hearing and that Father had provided all information known to him. Further, the social worker gave Father her contact information and asked him to contact her if he learned anything more. The notice additionally stated that the social worker had used Accurint to gather information for the notices.

The jurisdiction and disposition report noted that during the dependency case involving T.C.'s sister, the court had found that ICWA did not apply.

DPSS filed an amended petition deleting the allegations that the parents had endangered T.C.'s health and safety. At the jurisdiction and disposition hearing, the court found the allegations of the amended petition to be true and removed T.C. from the

4

parents' custody. It denied the parents reunification services under section 361.5, subdivision (b)(10), (11), and (13). The court set a hearing under section 366.26.

As to ICWA, DPSS explained that it had sent ICWA notices to the Cherokee tribes and stated: "[Father] was interviewed, and we did have, I believe, prior family information from that previous dependency." The court found reason to know that T.C. was an Indian child and that DPSS had provided good notice under ICWA.

After the jurisdiction and disposition hearing, the Eastern Band of Cherokee Indians responded that T.C. was neither registered nor eligible to register as a member of the tribe, and the tribe did not consider him an Indian child within the meaning of ICWA. The Cherokee Nation also responded that T.C. was not an Indian child in relation to the tribe. The record does not contain any response from the United Keetoowah Band of Cherokee Indians.

In the report for the section 366.26 hearing, the social worker stated that he had recently left a message for Father to determine whether Father had any ICWA updates. The social worker also recommended that the court find ICWA did not apply.

At the section 366.26 hearing in August 2020, the court found that ICWA did not apply in relation to the Eastern Band of Cherokee Indians or the Cherokee Nation. The court continued the hearing so that an adoption assessment could be completed.

The continued section 366.26 hearing was held in October 2020. The court found that T.C. was likely to be adopted and that adoption was in his best interest, and it terminated parental rights. DPSS noted that it had not received any more information from the noticed tribes. The court found that ICWA did not apply.

5

DISCUSSION

Mother argues that the juvenile court and DPSS failed to comply with the duty of initial inquiry and the duty of further inquiry under ICWA. Consequently, Mother argues, the court's finding that ICWA did not apply was not supported by substantial evidence. We conclude that, at a minimum, further inquiry is required.

ICWA requires notice to Indian tribes "in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court [or social worker] knows or has reason to know that an Indian child is involved.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8, quoting 25 U.S.C. § 1912(a); accord § 224.3, subd. (a).) An "'Indian child'" is any unmarried person under 18 who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord § 224.1, subd. (b).)

DPSS and the juvenile court have an "affirmative and continuing duty to inquire" whether the child in the dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) When DPSS takes the child into temporary custody, its duty to inquire includes asking "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child," and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) In addition, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).)

6

When the initial inquiry gives the juvenile court or social worker "reason to believe that an Indian child is involved," the court and social worker must conduct further inquiry to "determine whether there is reason to know a child is an Indian child." (§ 224.2, subd. (e) 1st par., (e)(2).) There is reason to believe an Indian child is involved if the court or the social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

Further inquiry includes, among other things, interviewing the parents and extended family members to gather the information required for the ICWA notice. (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).) To the extent known, the notice must include the names, birthdates, current and former addresses, places of birth and death, and any tribal enrollment information for the parents, grandparents, and great-grandparents. (§ 224.3, subd. (a)(5)(C).) DPSS "must make a meaningful effort to contact specified family members who might have pertinent information." (*In re K.R.* (2018) 20 Cal.App.5th 701, 707.) In addition, the agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Cal. Rules of court, rule 5.481(a)(5).)

Here, Mother argues that DPSS and the court failed to discharge their duty of initial inquiry because Father provided conflicting information about Indian ancestry when interviewed for the detention report, and the agency and the court failed to seek clarification. Mother argues that the report was unclear "whether paternal grandfather

7

was a 'Cherokee Indian' or there was merely Indian ancestry." She further contends that Father's response provided a reason to believe that T.C. was an Indian child and therefore triggered the duty of further inquiry.

Regardless of whether Father initially provided conflicting information, we agree with Mother that his response to the initial interview and his form ICWA-020 triggered the duty of further inquiry. Father provided information suggesting that either T.C. or Father was a Cherokee member or eligible for Cherokee membership. DPSS was thus required to make a meaningful effort to interview extended family members who might have pertinent information. Yet there is no indication that DPSS attempted to contact extended paternal family members, including the relative through whom Father claimed Cherokee ancestry, namely, paternal grandfather. Paternal grandfather was alive and living in Corona, California, according to the ICWA notice. Searching Accurint did not satisfy the statutory requirements of further inquiry, particularly if there were living relatives who could provide information.

Moreover, using decade-old information obtained from T.C.'s sister's case also did not satisfy the statutory requirements. The record of the sister's case is not part of the record on the present appeal. We have no evidence concerning the inquiries DPSS made in that case or what information the ICWA notice included. And even if we had the sister's record, we would still have no evidence showing whether different information about family members might be available today or how the tribes might have changed their eligibility criteria over the years since the sister's case. In short, "[i]t is important to not lose sight of the fact that ICWA notices in separate dependency cases are not fungible

8

evidence—even when the separate cases involve [children] who share the same parent with Indian heritage." (*In re Robert A.* (2007) 147 Cal.App.4th 982, 990.)

In addition to DPSS's obligation to conduct further ICWA inquiry, the court had "a responsibility to ascertain that the agency ha[d] conducted an adequate investigation." (*In re K.R.*, *supra*, 20 Cal.App.5th at p. 709.) The court could not assume that DPSS had fully complied with its obligations merely because the agency had obtained some of the relevant information and noticed the tribes. (*Ibid.*) Yet there is no evidence in the record that the court asked DPSS about its efforts to contact paternal grandfather or other paternal family members who might have information about paternal grandfather's Cherokee ancestry.

Accordingly, DPSS and the court failed to perform their duties of further inquiry. The court's finding at the section 366.26 hearing that ICWA did not apply "implie[d] that the duty of inquiry under California's ICWA-related law had been satisfied." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 887.) The record did not contain substantial evidence to support that finding, in the absence of information about DPSS's and the court's efforts to conduct further inquiry. (§ 224.2, subd. (i)(2) [ICWA finding "subject to reversal based on sufficiency of the evidence"]; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467 [ICWA findings reviewed for substantial evidence].)

The ICWA error requires a conditional reversal. Although the ICWA notice in this case contained much of the required biographical information about T.C.'s paternal family members, we cannot say that the failure to conduct further inquiries was harmless on that ground. (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576 [harmless error

9

analysis applies to errors or omissions in ICWA notice].) The notice was notably lacking in at least one respect: It contained no information about paternal grandfather's mother. And there is no information in the record showing that paternal grandfather traced his Cherokee ancestry solely through his father (whose information was included in the notice). It is at least possible that, if contacted, paternal grandfather could have provided some of the biographical information about his mother. As both of the tribal response letters explained, the responses were "based on the information exactly as provided," and any omitted information could "invalidate" the tribes' determination that T.C. was not an Indian child. (Boldface omitted.) We therefore cannot conclude there is no reasonable probability that the tribes' responses would have been different if DPSS had conducted a proper further inquiry.

For all of these reasons, we conclude that the court and DPSS did not comply with the duty of further inquiry under ICWA and related state law. We must conditionally reverse the order terminating parental rights and remand the matter for the court and DPSS to satisfy that duty and for DPSS to notice the pertinent tribes, if required. (*In re K.R.*, *supra*, 20 Cal.App.5th at p. 709.)

### DISPOSITION

The order terminating parental rights is conditionally reversed. On remand, the juvenile court shall ensure that DPSS complies with the duty to further investigate Father's claim of Cherokee ancestry under section 224.2, subdivision (e) and, if applicable, the duty to provide notice to the pertinent tribes under section 224.3. If the court determines that ICWA does not apply—either (1) because DPSS has conducted a

10

sufficient inquiry and the prior ICWA notice was sufficient, or (2) because DPSS's further inquiry requires it to resend notice to the pertinent tribes, and the tribes' responses show that T.C. is not an Indian child—then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ _____
J.

We concur:

RAMIREZ _____
P. J.

RAPHAEL _____
J.

11