Filed 5/16/23  In re J.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re J.C. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080340 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1700505) |
| v. | OPINION |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Kelly L. Hansen, Judge. Conditionally reversed and remanded with directions.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

J.C. (Mother) appeals from the juvenile court's order terminating parental rights to three of her children. She argues that the court and the Riverside County Department of Public Social Services (DPSS) failed to comply with state law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We conditionally reverse the order terminating parental rights and remand for further proceedings.

BACKGROUND

I. *Detention, Jurisdiction and Disposition, and Termination of Parental Rights*

Mother has seven children. J.I.C., J.L.C., and J.M.C. are the subjects of this appeal. In November 2021, DPSS received a referral alleging physical abuse of the oldest sibling, 15-year-old Ja.C. Ja.C. was at the hospital, where a forensic medical exam revealed significant injuries reportedly caused by Mother. The child had six to seven fractured ribs, fractures on his sternum, and fresh wounds on his back and arms inflicted by a vacuum cord.

A law enforcement officer at the hospital advised the social worker that he would be arresting Mother. The social worker accompanied the officer to Mother's home, where the officer arrested Mother for physical abuse of Ja.C. Mother could not identify any temporary caregivers for the children, and the social worker took temporary custody of all seven of them.

DPSS filed a petition alleging that the children fell within subdivisions (a), (b), (g), and (j) of Welfare and Institutions Code section 300. (Unlabeled statutory citations

2

refer to this code.) A few days later, the court detained the children from Mother. At the time, J.I.C. was three years old, J.L.C. was 10 years old, and J.M.C. was 13 years old.

DPSS's investigation revealed that Mother had physically abused all seven children, although Ja.C. suffered the most severe physical abuse. In April 2022, the court found the allegations of the fourth amended petition to be true and took jurisdiction over the children. The court found that DPSS had conducted a sufficient ICWA inquiry and that ICWA did not apply.

With respect to two of the seven children, the court granted their father sole legal and physical custody and terminated jurisdiction over them. The court adjudged the remaining five children dependents of the court, removed them from the custody of Mother and their respective fathers, and denied the parents reunification services. The court denied reunification services for the fathers of J.L.C. and J.M.C. because the fathers' whereabouts were unknown. (§ 361.5, subd. (b)(1).) J.I.C.'s father had appeared in the case, but the court denied him reunification services for other reasons. (See § 361.5, subds. (b)(10), (e)(1).)

The section 366.26 hearing as to J.I.C., J.L.C., and J.M.C. occurred in December 2022.[1] The court found that the three children were likely to be adopted and terminated

---

[1] The court did not hold a section 366.26 hearing with respect to Ja.C. and the other remaining member of the sibling group. Ja.C. had been found gravely disabled by a mental health disorder, and a conservatorship had been ordered under the Lanterman-Petris-Short Act (§ 5000 et seq.). He was receiving treatment at a residential psychiatric facility. The other sibling had been detained several times for evaluation and treatment under section 5150, and the child was placed in a short-term residential therapeutic program.

parental rights. Although the court did not make an express ICWA finding, the order terminating parental rights "was 'necessarily premised on a current finding by the juvenile court'" that ICWA did not apply to the children. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740 (*Benjamin M.*).)

II. *ICWA-Related Background*

The record does not contain ICWA-020 forms (Parental Notification of Indian Status) for the parents.[2] According to the detention report, the children were the subject of a dependency case in 2017 and 2018. The juvenile court found in that prior case (in August 2018) that ICWA did not apply to the children. The detention report contained no indication that the social worker asked Mother about the children's Indian status in this case. DPSS could not locate the fathers of J.I.C., J.L.C., and J.M.C., so the social worker did not ask them about the children's Indian status either. The ICWA-010(A) forms (Indian Child Inquiry Attachment) attached to the petition appeared to rely on the ICWA inquiry conducted in the prior case. The forms indicated that the social worker was "advised by [the] Prior Dependency Court Case" that Mother had been questioned about the children's Indian status. On the basis of that earlier inquiry, the social worker checked the box indicating that she had reason to believe the children are or may be Indian children. The ICWA-010(A) forms identified the Cherokee Nation as the relevant tribe.

---

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 739, fn. 1.)

The jurisdiction/disposition report contained additional information about the ICWA findings in the prior dependency case: The juvenile court found in June 2018 that J.I.C. may be an Indian child, but the court concluded that ICWA did not apply because the child was placed in Mother's home. The social worker also reported that in the present case she recently tried to ask Mother about the children's Indian status and could not; Mother was jailed and unavailable for visitation. DPSS had found J.I.C.'s father, who was incarcerated, and the social worker mailed him a letter asking him to contact her to discuss the proceedings. Shortly before the jurisdiction and disposition hearing, the social worker mailed him another letter. She reportedly received no response.

Mother was present at the detention hearing and several other hearings, and the court did not ask her about the Indian status of the children. J.I.C.'s father was present by phone for several hearings, and the court did not ask him about the child's Indian status either. DPSS had contact with J.I.C.'s paternal grandmother and paternal uncle about placement, but there is no indication that the agency asked those relatives about the child's Indian status. DPSS also had contact with several maternal family members about placement, including maternal aunt, two maternal great aunts, maternal uncle, and two people identified merely as maternal relatives. The record contains no indication that DPSS asked those relatives about the children's Indian status.

## DISCUSSION

Mother argues that DPSS and the juvenile court failed to comply with their duty of initial inquiry under ICWA-related state law. DPSS acknowledges that its initial ICWA

inquiry was "incomplete" and does not oppose a conditional reversal and remand. Mother also argues that DPSS failed to comply with its duty of further inquiry as to J.I.C. We agree with Mother on both issues.

DPSS and the juvenile court have an "'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.'" (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), quoting § 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*Ibid.*)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) DPSS's "duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224, subd. (a).) In addition, "[f]ederal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).)" (*Ricky R.*, at pp. 678-679.) Similarly, "[s]tate law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).)" (*Ricky R.*, at p. 679.)

In some cases, California law requires DPSS to do more as part of its initial inquiry. (*In re Robert F.* (2023) 90 Cal.App.5th 492, 500 (*Robert F.*).) Specifically,

6

under subdivision (b) of section 224.2, "[i]f a child is placed into the temporary custody of a county welfare department pursuant to section 306," DPSS must ask "'extended family members'" about the child's Indian status. "Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679.)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry. (§ 224.2, subd. (e), 1st par.) '[R]eason to believe' exists whenever the court or DPSS has 'information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.' (§ 224.2, subd. (e)(1).) The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility. (§ 224.2, subd. (e)(2)(A)-(C).)" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679.)

When DPSS or the court fails to comply with its duty of inquiry under state law, we will find the error to be prejudicial and conditionally reverse if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

The court and DPSS failed to comply with their duty of initial inquiry here. The court did not ask Mother or J.I.C.'s father about the children's Indian status when they appeared in court. DPSS never asked the parents about the issue. The agency also failed to ask extended family members about the children's Indian status, despite having contact with numerous relatives about placement. The agency triggered that requirement to ask extended family members as part of the initial inquiry when it took the children into temporary custody without a warrant under section 306. (§§ 224.2, subd. (b), 306, subd. (a)(1), (2); *Robert F.*, *supra*, 90 Cal.App.5th at pp. 500-501.)

Moreover, DPSS failed to discharge its duty of further inquiry with respect to J.I.C. The agency had reason to believe that J.I.C. is an Indian child—the court in the prior dependency case found that the child may be an Indian child. But DPSS failed to interview the parents and extended family members to gather biographical information and did not informally contact the relevant tribe, whether that was the Cherokee Nation or some other tribe.

All of those ICWA errors were prejudicial. DPSS had contact information for Mother, J.I.C.'s father, J.I.C.'s paternal extended family members, and maternal extended family members. Those individuals thus were readily available, and their responses would shed meaningful light on whether the children are Indian children, whatever the outcome of the inquiry may be. (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 680.) Likewise, the further inquiry of the parents, extended family members, and the relevant tribe would shed meaningful light on whether J.I.C. is an Indian child.

8

The court and DPSS could not merely rely on the 2018 findings in the prior dependency case, nor can we rely on those findings to conclude that the errors are harmless here. The record in the prior case is not before us. We have no evidence concerning the inquiries made in that case beyond the bare assertion that Mother was questioned. Mother might have information today that differs from what she had in 2018. And assuming that DPSS contacted the Cherokee Nation years ago, the tribe might have changed its eligibility criteria since then. Further, the duty to question extended family members as part of the initial inquiry did not exist in 2018—that expanded duty of initial inquiry took effect in 2019. (Stats. 2018, ch. 833, § 5; *Robert F.*, *supra*, 90 Cal.App.5th at p. 502.) The duty of further inquiry also became effective in 2019. (Stats. 2018, ch. 833, § 5; *Robert F.*, at p. 503.) DPSS consequently had no reason to conduct many of the inquiries now required. In short, the ICWA-related records in the prior case "are not fungible evidence." (*In re Robert A.* (2007) 147 Cal.App.4th 982, 990.)

For all of these reasons, we must conditionally reverse the order terminating parental rights and remand for a proper ICWA inquiry.

DISPOSITION

The order terminating parental rights to J.I.C., J.L.C., and J.M.C. is conditionally reversed. On remand, the juvenile court shall comply with the duty of initial inquiry and order DPSS to comply with its duty of initial inquiry. (§ 224.2, subds. (b), (c).) The court shall also order DPSS to comply with the duty of further inquiry (§ 224.2, subd. (e)) as to J.I.C. and, if applicable, the other children. Further, the court shall order DPSS to

9

comply with the duty to provide notice to the pertinent tribes, if applicable.  (25 U.S.C. § 1912(a); § 224.3)  If the court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights.  If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.


We concur:

McKINSTER
Acting P. J.
MILLER
J.