Filed 3/5/25  In re Mason W. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re MASON W. et al., Persons Coming Under the Juvenile Court Law. | B339677 (Los Angeles County Super. Ct. No. 19LJJP00280A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>D.W.,<br><br>        Defendant and Appellant. | |

        APPEAL from orders of the Superior Court of Los Angeles County, Tara L. Newman, Judge.  Affirmed.

        William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

D.W. (mother) appeals from orders terminating her parental rights to Mason (born April 2019) and L.D. (born September 2022).  Her sole argument is the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court failed to conduct appropriate inquiry and provide proper notice under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).  We find sufficient evidence supports the juvenile court's finding that ICWA inquiry and notice were proper and affirm the orders.

## COMBINED FACTUAL AND PROCEDURAL HISTORY

On April 24, 2019, the juvenile court granted a request by DCFS to detain Mason from mother's custody due to allegations mother was having mental health issues.  The child was detained the same day.

A petition filed on behalf of Mason pursuant to Welfare and Institutions Code section 300[1] alleged mother had a history of mental health issues including bipolar disorder, PTSD, major depressive disorder, and suicidal ideations.  Mother failed to participate in mental health treatment, failed to take prescribed psychotropic medications, and had recently been placed on a

---

[1]	All further undesignated statutory references are to the Welfare and Institutions Code.

2

psychiatric hold.[2]  An ICWA-101(A) form attached to the petition reflected Mason had no known Indian ancestry.

On April 29, 2019, mother filled out a parental notification of Indian status (ICWA-020) form and indicated she might have Indian ancestry in an "unknown" tribe.  The juvenile court ordered DCFS to further investigate mother's possible Indian ancestry including related case filings.

On May 6, 2019, mother told DCFS she was unable to provide additional information as to any Indian ancestry and wanted to retract her previous statement about having Indian ancestry.  Mother reiterated she did not know the name of any specific tribe.  Mother provided DCFS with the telephone number of her maternal grandmother, Toni W., but the agency received a message indicating the number was not reachable.  DCFS left a detailed message with the maternal grandfather, Damien W., and requested a return call, but never received one.

On May 8, 2019, DCFS reported the juvenile court found ICWA not applicable in mother's 2010 dependency case as a minor.

On May 14, 2019, DCFS interviewed maternal grandfather who reported his family was connected to the Cherokee tribe.  Maternal grandfather's cousin, Elbey M., was registered with the tribe.  The dependency investigator inquired whether any other relatives or maternal grandfather's parents were enrolled with the tribe.  Maternal grandfather reported he was a Moor and had linkage to the Geechee, also known as Gullah culture, and it should not matter if he was registered with a tribe or not.  Maternal grandfather did not know his cousin's tribe

---

[2]  Mother is a nonminor dependent.

membership number, the tribe information or the cousin's date of birth. During the interview, maternal grandfather allowed the dependency investigator to speak with his mother (maternal great-grandmother), who reported her family was connected to the Cherokee tribe. During the interview, when the dependency investigator asked maternal great-grandmother for her address, the phone abruptly disconnected. The dependency investigator called the maternal grandfather again and left a detailed message requesting a return call that was never received.

On May 17, 2019, DCFS sent notices to the Cherokee tribes via certified mail. The notices were sent to the Cherokee, Cherokee Nation of Oklahoma, Eastern Band of Cherokee Indians, United Keetoowah Band of Cherokee Indians in Oklahoma, Bureau of Indian Affairs, and Secretary of the Interior. The notices contained information regarding mother, Mason's father, maternal grandparents, and maternal great-grandparents. In the section titled "Other relative information," the notices contained the name of Elbey M. and designated him as maternal first cousin, twice removed. Elbey M.'s tribe was named as the Cherokee tribe.

On June 13, 2019, DCFS reported it received no responses from the tribes but had received signed certified mail receipts indicating the notices were received by the tribes. DCFS subsequently reported receipt of a letter from the Eastern Band of Cherokee Indians indicating based on the information received, the child was neither registered as a member of the tribe nor eligible to register as a member of the tribe, and the child was not an Indian child pursuant to ICWA.

At the combined jurisdiction/disposition hearing on June 27, 2019, mother pled no contest. Mason was declared a

4

dependent of the court and placed in mother's custody with family maintenance services.

On July 24, 2019, DCFS reported it contacted the Cherokee Nation and was informed it would be approximately 60 days before a response letter was generated. The agency received a letter from the United Keetoowah Band of Cherokee Indians indicating Mason was not recognized as a citizen nor eligible to become a citizen of the tribe, and he did not meet the definition of an Indian child under ICWA. On July 24, 2019, the juvenile court determined it had no reason to believe ICWA applied to Mason's case.

In January 2020, DCFS reported its continued efforts to contact Mason's alleged father, whose whereabouts remained unknown.

On June 2, 2021, DCFS filed a supplemental dependency petition alleging Mason was no longer safe in mother's custody. The petition alleged mother's ongoing mental health issues interfered with her ability to care for Mason. In May 2021, mother was hospitalized after repeatedly hitting herself in an attempt to kill imaginary bugs and screaming while naked. On November 29, 2021, mother pleaded no contest to the allegations. Mason was placed in foster care, and mother was ordered to participate in services.

On June 18, 2021, DCFS asked mother about any Indian heritage. Mother responded, "[Y]es, but I have never been assigned to a tribe or have been around my family to know anything." Mother said she was removed from her parents when she was nine years old and had no contact with her younger siblings, who were also "in the system."

In September 2022, mother gave birth to L.D.

At Mason's 12-month review hearing on January 6, 2023, the court found mother had made substantial progress with her case plan and returned Mason to mother's custody while she continued to participate in services.

On May 16, 2023, DCFS filed a dependency petition on behalf of L.D. and a subsequent petition on behalf of Mason, alleging the children came within the juvenile court's jurisdiction under subdivisions (b) and (j) of section 300. The petition alleged mother was neglecting L.D. and failed to ensure L.D. received enough food. In addition, the petition alleged mother had a history of drug use, had drugs in her home, and had allowed a maternal aunt to use drugs in her home.

The petitions attached ICWA-010(A) forms. Mother was interviewed on May 12, 2023, and she provided no reason to believe either Mason or L.D. was an Indian child. L.D.'s father, Danny D. (father), was interviewed on May 13, 2023, and also gave DCFS no reason to believe L.D. was or might be an Indian child.[3]

On May 17, 2023, father submitted an ICWA-020 form indicating one or more of his lineal ancestors was a member of the Cherokee tribe. At the hearing, father indicated he had Cherokee lineage. When asked by the court if father was enrolled as a member in any tribe, father responded, "In certain places I am. In San Bernardino I was. In L.A., I'm waiting for all my paperwork to come through." When questioned further whether he was enrolled in a tribe, father responded, "Not right now. I'm waiting for approval right now." Father claimed he had relatives

---

[3]    Neither Mason's father nor L.D.'s father are parties to this appeal. Mason's father's whereabouts were unknown throughout the proceedings.

who lived on a reservation in Jurupa Valley. When asked whether he had any information about the family ancestry, father responded, "I'm doing the ancestry.com on that right now. I was committed by one of the committees in Jurupa." The juvenile court ordered DCFS to follow up with the tribe and any available relatives. The children were detained the same day.

On June 2, 2023, father denied being a registered member of an Indian tribe, saying he was not affiliated with any tribe but reported, "I grew up in foster care and a couple of people with the Cherokee tribe accepted me into their tribe." Father indicated he would request letters from the tribe regarding his pending registration status.

On June 13, 2023, father reported he was not a registered tribal member and did not have any Native American ancestry, though he was still working on getting a letter from his friend indicating he was invited to join the friend's tribe. Father reported having five siblings with whom he had no contact and who had "aged out of foster care." Father was detained at birth, never met his mother, and his father's identity was unknown.

On June 26, 2023, mother submitted an ICWA-020 form indicating maternal grandfather is or was a member of the Cherokee Nation of Oklahoma. Mother's attorney reported mother recently learned her grandfather, who was no longer alive, was part of the Cherokee Nation. Mother said she would try to contact her father's side of the family when she was released from prison but did not then know their contact information. The court ordered DCFS to investigate mother's claims of Indian ancestry. The court found it had no reason to know ICWA applied as to mother.

7

In July 2023 the maternal grandparents' whereabouts were reported to be unknown. Mother said she did not have a relationship with the maternal grandparents. On July 6, 2023, mother conceded she was not a registered member of a tribe, though "I think I have Cherokee and an African tribe."

On July 21, 2023, mother denied having Native American ancestry.

At the August 25, 2023 jurisdiction hearing, the juvenile court found the allegations in the petition to be true and placed Mason in foster care. Mother was denied reunification services due to her previous failure to make progress. The juvenile court assumed jurisdiction over L.D. At the conclusion of the disposition hearing on September 12, 2023, L.D. was placed in foster care with Mason. Mother and father were ordered to participate in reunification services.

In its December 2023 report DCFS addressed its ICWA inquiries. In July 2023, maternal cousin, Willie G., was contacted and reported being unaware of any Native American ancestry. DCFS also contacted nonrelated extended family member Destiny C., who was unaware of any Native American ancestry in mother's family. On July 25, 2023, maternal great-great-aunt, Regina L., reported having Red Cherokee on her mother's side of the family. Maternal great-aunt Tanya W. reported being unaware of any Native American ancestry in the family.

On March 12, 2024, the juvenile court held neither mother nor father had made significant progress with their case plans and terminated reunification services. The court scheduled a section 366.26 hearing to choose a permanent plan for L.D. and

notified the parents of their right to challenge the court's orders by writ petition.

Mother's whereabouts were unknown between October 2023 and March 2024. On April 25, 2024, the juvenile court ordered mother transported from jail to appear at the section 366.26 hearing for Mason.

Mason's section 366.26 hearing took place on May 30, 2024. The juvenile court found Mason was adoptable, terminated parental rights, and ordered adoption as his permanent plan, designating his foster parents as his prospective adoptive parents. On July 29, 2024, mother filed a notice of appeal from the order terminating her parental rights.

On July 8, 2024, the juvenile court found, based on DCFS's ICWA investigation, the court had no reason to believe L.D. was an Indian child. The court noted father never provided any documentation he was registered with a tribe, while observing, "[father] also noted he did not have American Indian ancestry but was invited to join a tribe, but he never provided documentation."

L.D.'s section 366.26 hearing took place on July 31, 2024. The court found L.D. was adoptable, terminated parental rights, and ordered adoption as his permanent plan, designating his foster parents as his prospective adoptive parents. On August 5, 2024, mother filed a notice of appeal from the order terminating her parental rights.[4]

---

[4] Mother filed a motion to consolidate the two appeals, which this court granted.

DISCUSSION

## I. Applicable law and standard of review

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129 (*Dezi*).)  "The issue of whether ICWA applies in dependency proceedings turns on whether the minor is an Indian child." (*Ibid.*)  "An 'Indian child' is defined as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'" (*Ibid.*)  "At the commencement of a child custody proceeding, the court is obligated to inquire from each participant whether there is a 'reason to know' that the child is or may be an Indian child." (*Id.* at pp. 1129–1130, fn. omitted.)  "The increased protections of ICWA apply 'where the court knows or has reason to know that an Indian child is involved.'" (*Ibid.*)

Section 224.2 "codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child." (*Dezi, supra*, 16 Cal.5th at p. 1131.)  "Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child." (*Id.* at pp. 1131–1132.)  "Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the

child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*Id*. at p. 1132.) "When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required." (*Ibid*.)

The juvenile court's finding that ICWA does not apply implies that social workers and the court did not know or have a reason to know the child was an Indian child, and the social workers fulfilled their duty of inquiry. (*In re Josiah T*. (2021) 71 Cal.App.5th 388, 401.) "The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.'" (*Dezi, supra*, 16 Cal.5th at p. 1134.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id*. at p. 1141.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation . . . , there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*Ibid*.)

## II.    ICWA inquiry and notices in Mason's case

Mother acknowledges DCFS sent notices to the appropriate tribes in Mason's case. However, Mother argues the notices were inadequate. Mother cites *In re Cheyanne F*. (2008) 164 Cal.App.4th 571, 576, for the proposition that notice to the pertinent tribes must contain sufficient information to enable the tribe to "conduct a meaningful review of its records to determine the child's eligibility for membership." Mother argues the ICWA notice provisions were triggered when maternal grandfather, and

11

subsequently great-grandmother, provided information suggesting the family was connected to a Cherokee tribe. While mother agrees DCFS sent notices to all the Cherokee tribes, mother argues DCFS failed to include any information about the maternal grandfather's cousin Elbey M., who was the registered tribal member. Further, mother argues, the notices failed to include information regarding other known maternal relatives, including two maternal cousins, a maternal great-aunt, and a maternal great-great-aunt. Mother argues this lack of information made the notices essentially useless as the tribe could not conduct a meaningful search to determine the child's tribal heritage. Mother cites *In re Louis S.* (2004) 117 Cal.App.4th 622, 631, in support of her position. The *Louis S.* court held where notices contained "misspelled and incomplete names, provided information . . . in the wrong part of the form, and did not provide birthdates . . . , the tribe could not conduct a meaningful search to determine Louis's tribal heritage." (*Ibid.*)

Mother's contention is, in part, incorrect. The notices sent by DCFS, under the heading "Other relative information," did contain the name of Elbey M. The notices designated him a maternal first cousin, twice removed, who named his tribe as Cherokee.

As to the two maternal cousins, maternal great-aunt, and maternal great-great-aunt, these relatives are not listed in section 224.3 as relatives that must be included in ICWA notices. (§ 224.3, subd. (a)(5)(C) [listing the Indian child's biological parents, grandparents, and great-grandparents for ICWA notices].) Mother does not explain how DCFS's failure to include this information constituted error, nor does mother explain how

12

such information was relevant considering DCFS included all other known required information.

*In re Breanna S.* (2017) 8 Cal.App.5th 636, disapproved on other grounds in *In re Caden C.* (2021) 11 Cal.5th 614, 637, footnote 6, is distinguishable. In *Breanna S.*, DCFS conceded it omitted required information from the ICWA notice. (*Breanna S.*, at p. 651.) It also admitted some of the missing information, including the maternal grandmother's former address and place of birth and the maternal great-grandparents' places of death, was known to it and was mistakenly omitted from the ICWA notices. DCFS admitted error, but argued its error was harmless. In contrast here, there was no error. DCFS properly filled out the forms to the best of its ability with the information it had accumulated.

DCFS properly inquired of mother's family. Mother does not contest the thoroughness of the inquiry as to the maternal relatives. The record shows DCFS made diligent efforts on the maternal side of the family and sent all potentially relevant tribes proper notice. The juvenile court did not err in finding inquiry and notice proper.

## III. ICWA inquiry in L.D.'s case

Mother argues DCFS failed to make adequate inquiry with respect to L.D.'s father. Father made contradictory and nonsensical statements regarding his purported affiliation with a Cherokee tribe. Initially, father gave DCFS no reason to believe L.D. was an Indian child. Then, at a hearing, father indicated he had Cherokee heritage. When asked by the court if he was enrolled in a tribe, father responded, "In certain places I am. In San Bernardino I was. In L.A., I'm waiting for all my paperwork to come through." When the attorney for DCFS again questioned

13

father whether he was enrolled in a tribe, father responded, "Not right now. I'm waiting for approval right now." In response to the court's question whether there were any relatives with family history, father responded he was "doing the ancestry.com on that right now." Father later denied being affiliated with any tribe, stating, "I grew up in foster care and a couple of people with the Cherokee Tribe accepted me into their tribe." Father said he would request letters regarding his registration status but failed to produce such letters. Father later admitted having no Native American ancestry. He was removed from his mother as a child, his father was unknown, and he had no contact with any of his siblings.

The Supreme Court recently confirmed in *Dezi* that an inquiry may be adequate and proper even if the agency "did not inquire of everyone who has an interest in the child." (*Dezi, supra*, 16 Cal.5th at p. 1141.) Section 224.2 "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.'" (*Dezi*, at p. 1140.) "'The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Ibid*.)

L.D.'s extended paternal relatives were not "reasonably available." (*Dezi, supra*, 16 Cal.5th at p. 1140.) Father provided no contact information for any relative or acquaintance that DCFS could reasonably contact to obtain further information. Further, father admitted to not being a member of any tribe. Thus, DCFS was under no obligation to provide any further notices to the Cherokee tribes.

14

*In re I.F.* (2022) 77 Cal.App.5th 152 is distinguishable. In *I.F.*, the mother had been told by her paternal grandmother the family had Native American ancestry through the mother's paternal grandfather. In addition, the maternal grandfather said his family had Native American ancestry in Minnesota. (*Id.* at p. 164.) Under those circumstances, the duty of further inquiry was triggered, and contrary to DCFS's arguments, such inquiry would not be futile.

Here, in contrast, there were no statements from extended family members on father's side indicating Native American ancestry. Father denied any such ancestry, stating only that certain individuals "accepted" him into their tribe. He was unable to provide any proof of membership or enrollment or any further details on his contradictory claims that he was accepted into a tribe. He never provided any extended family contact information, nor did any extended family members suggest there was Native American ancestry on father's side. Under the circumstances, DCFS conducted an adequate inquiry, and no further notices were required.

*In re Robert A.* (2007) 147 Cal.App.4th 982 is also distinguishable. In *Robert A.*, the agency filed a motion to augment the record on appeal with ICWA notices and documents filed in the separate case of Robert's half sibling. The court denied the agency's request to augment the record for two reasons. First, the orders challenged in Robert's appeal "were issued two months before the ICWA notices in the half sibling's case were mailed to the Indian tribes. Also, ICWA documents from the half sibling's case were not filed in Robert's dependency case." (*Id.* at pp. 989–990.) The court reasoned, "[a]ppellate courts rarely accept postjudgment evidence." (*Id* at p. 990.)

15

Further, the court noted "ICWA notices in separate dependency cases are not fungible evidence," and the agency had the duty in Robert's case to notice the tribes and "file with the juvenile court, which heard Robert's case, those notices, any responses it received and proof of required postal receipts to allow the court to determine if there was proper and adequate notice." (*Ibid.*)

In the matter before us, Mason and L.D. were subjects of the same dependency case, in which DCFS filed its ICWA notices and documents. The juvenile court thus had sufficient evidence to determine whether there was proper ICWA inquiry and notice. Father has failed to show the juvenile court erred in determining the inquiry and notices were adequate in this case.

## DISPOSITION

The orders are affirmed.

CHAVEZ, J.

We concur:

LUI, P. J.

RICHARDSON, J.

16